AO 106A  (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Purple Apple iPhone 14 Pro Max Seized Under Barcode<br>Number M000652081 | )<br>)<br>)<br>)<br>)<br>)<br>) |

Case No.   26mj2619

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A

located in the _____Southern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

❏ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

❏ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841, 846, 859, 861<br>18 USC 924(c) | Distribution of Controlled Substances, Distribution to Minors, Using Minors in a Drug Offense, and Conspiracy<br>Possession of Firearm in Furtherance of Drug Trafficking Offense |

The application is based on these facts:
See Attached Affidavit

❏ Continued on the attached sheet.

❏ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

ARNOLDO VALENZUE Digitally signed by ARNOLDO VALENZUE
Date: 2026.05.01 10:17:51 -07'00'

*Applicant's  signature*

Arnoldo D. Valenzuela, DEA Special Agent

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means).*

Date:    05/01/2026

*Judge's signature*

City and state:   San Diego, California          Hon. Michael S. Berg, United States Magistrate Judge

*Printed name and title*

## ATTACHMENT A-1

PROPERTY TO BE SEARCHED

The following property is to be searched:

Purple Apple iPhone 14 Pro Max impounded under barcode number M000652081
("Target Device")

The Target Device is currently in the custody of the DEA, located at 5810 Newton Dr, Carlsbad, California 92008.

**ATTACHMENT B**
ITEMS TO BE SEIZED

Authorization to search the cellular telephones described in Attachment A-1 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the Target Device will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, web history, files, metadata, photographs, audio files, videos, and location data, from the time of its first use through October 4, 2024:

a. tending to indicate efforts to produce or distribute controlled substances, or use minors to do so;

b. tending to identify accounts, facilities, storage devices, and/or services—such as email addresses, IP addresses, and phone numbers—used to facilitate the production or distribution of controlled substances, or the use of minors to do so;

c. tending to indicate efforts to obtain, maintain, or use firearms to further the Target Offenses;

d. tending to identify co-conspirators, criminal associates, or others involved in the production, distribution, or use of minors to produce or distribute controlled substances;

d. tending to identify travel to or presence at locations involved in the production or distribution of controlled substances within the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Devices; and

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

which are evidence of violations of 21 U.S.C. §§ 841, 846, 859, and 861, and 18 U.S.C. 924(c) (the Target Offenses).

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

## AFFIDAVIT

I, Arnoldo D. Valenzuela, a Special Agent with the Drug Enforcement Administration (DEA), being duly sworn, hereby state as follows:

## INTRODUCTION

This affidavit supports applications for warrants authorizing the search of the following electronic device:

**a.** Purple Apple iPhone 14 Pro Max belonging to Randal Vance (**Target Device**)

The **Target Device** was seized from Randal VANCE at the time of his arrest on October 4, 2024.

Based on the facts set forth below, I believe there is probable cause to search the devices for evidence of a crime or property designed for use, intended for use, or used in committing violations of Title 21, United States Code, Sections 841, 846, 859, and 861 and Title 18, United States Code, Section 924(c)(Distribution of a Controlled Substance, Distribution of a Controlled Substance to Minors, Employing a Minor to Produce or Distribute a Controlled Substance, and Conspiracy, and Possession of a Firearm During and in Furtherance of a Drug Offense).

The following is based on the investigation of the DEA and the San Diego Sheriff's Department (SDSO). Except as otherwise noted, the information set forth in this affidavit has been provided to me by federal, state, and local task force officers or other law enforcement officers. Unless otherwise noted, whenever in this affidavit I assert that a statement was made, the information was provided by another law enforcement officer (who may have had either direct or hearsay

knowledge of the statement) to whom I have spoken or whose report I have read and reviewed.  Likewise, information resulting from surveillance, except where otherwise indicated, does not necessarily set forth my own observations, but rather has been provided directly or indirectly by other law enforcement officers who conducted such surveillance. Since this affidavit is for a limited purpose, I have not included every fact I know about this investigation. I set forth only facts necessary to establish foundation for the requested warrant. Dates and times are approximate.

## AFFIANT'S QUALIFICATIONS

I am a Special Agent (SA) Criminal Investigator for the United States Drug Enforcement Administration (DEA), and I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 of the United States Code.  As such, I am empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. § 2516.  Further, I am a federal law enforcement officer within the meaning of Rule 41(a)(2)(C) of the Federal Rules of Criminal Procedure. I am authorized under Rule 41(a) to make applications for search and seizure warrants and to serve arrest warrants. I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

I have been a Special Agent since December of 2022. My training includes a 17-week Basic Agent course at the DEA Academy where I received training in surveillance techniques, drug identification, law, confidential source management, and methods and tactics of narcotics trafficking. Upon graduation from the DEA Academy, I was assigned to San Diego Field Division where I currently am assigned to the Carlsbad Resident Office.

While with the DEA, I have participated in investigations involving federal violations of Title 21; which establishes federal U.S. drug policy under which the

manufacture, importation, possession, use, and distribution of certain substances is regulated. I have been present during the debrief of confidential sources, conducted surveillance on multiple narcotics transactions, and processed both drug and nondrug evidence. Based on my training, experience, and information provided to me by other agents from federal, state, and local law enforcement agencies, I am familiar with drug trafficking methods including methods of communication, transportation, packaging methods, distribution, and marketing of the controlled substance. I am also familiar with methods used to conceal criminal activity including the use of coded language, the use of platforms such as Instagram, and the use of digital payment systems that allow users to send and receive money electronically such as PayPal, Apple Pay, and Venmo.

Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in the distribution of narcotics may yield evidence:

a.      tending to indicate efforts to distribute controlled substances;

b.      tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the distribution of controlled substances;

c.    tending to identify co-conspirators, criminal associates, or others involved in distribution of controlled substances;

d.    tending to identify travel to or presence at locations involved in the distribution of controlled substances, such as stash houses, load houses, or delivery points;

e.    tending to identify the user of, or persons with control over or access to, the phones; and/or

f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## **PROBABLE CAUSE**

1.    In August of 2024, the DEA Carlsbad Resident Office and the San Diego County Sheriff's Department (SDSO) began investigating Randal Scott VANCE's involvement in a psilocybin mushroom cultivation operation. Psilocybin is a Schedule I substance under the Controlled Substances Act. Schedule I drugs are described as having a high potential for abuse, no currently accepted medical use in treatment in the United States, and a lack of accepted safety for use under medical supervision. Possession, cultivation, or distribution of psilocybin mushrooms is a felony violation of 21 U.S.C. 841(a)(1).

2.    During the investigation, a United States Postal Inspector informed investigators that VANCE's residence was associated to a business named "Psilly Rabbit Mushrooms." Using open-source investigating tools, investigators uncovered a "Psilly Rabbit" coloring book being sold on Amazon. Upon further examination, investigators found an Instagram page with the Instagram handle of "Psillyrabbitca." On the Instagram account Psillyrabbitca, psilocybin mushrooms were being marketed as the Instagram page was open to the public and was not made    private.    On    the    Instagram    page    was    a    link    to

www.psillyrabbitmushrooms.com, where customers could purchase psilocybin mushrooms through the website.

3.    On October 3, 2024, the investigators obtained a search warrant for a SERVPRO business operated by VANCE located at 215 West Ash St., Fallbrook, California 92028 and for VANCE's home located at 6777 West Lilac Rd., Bonsall, California 92003.

4.    Investigators seized the following items at the SERVPRO:

a) 204 pounds of growing mushrooms still contained within their growing medium.

b) 18 pounds of inoculated mushroom substrate[1].

c) 53 pounds of dried mushroom.

d) 35 pounds of chocolate bars believed to contain psilocybin.

5.    Investigators seized the following items at VANCE's home:

a) 25 pounds of dried mushrooms.

b) 5 pounds of chocolate bars believed to contain psilocybin.

c) 5 pounds of 1-gram psilocybin pill capsules.

d) 0.74 grams of LSD.

e) 3.75 grams of MDMA.

f) 4.8 grams of Ketamine.

g) 6 firearms including handguns and rifles.

6.    Also, at VANCE's home at the time of the execution of the search warrant were his two minor children, ages 10 and 12.

---

[1] The process of inoculation of mushrooms is the insertion of a mushroom spawn into a substrate that is suitable for growing. The mushroom substrate itself is a sawdust or woodchip material that has been intentionally mixed with mushroom spawn to initiate the growth of mushrooms. This process is the starting point for cultivating mushrooms.

7. A California Department of Family & Child Well-Being investigator assigned to Drug Endangered Children program (DEC) was called but was unable to respond to the location. The minors' mother, REBECCA Vance, was contacted at VANCE's request and the minors were released to her. VANCE was arrested, transported, and booked into the San Diego County Vista Detention Facility and charged with several California state Health & Safety and Penal code section violations.

8. During the post Miranda interview, VANCE admitted to being the owner and operator of the Psilly Rabbit Instagram page and the website www.psillyrabbit.com. VANCE stated he had tried using both platforms to market the sale of psilocybin mushrooms.

9. On October 8, 2024, the SDSO Deputy assigned to the case applied for and was granted a California State Search Warrant for the search of the **Target Device** for data from October 4, 2023 to October 4, 2024. A search of the phone revealed text messages between VANCE and customers discussing psilocybin mushroom sales, as well as between VANCE and others assisting in growing and distributing the psilocybin. There are numerous messages of VANCE sharing pictures of his product, what is contained in his product, and discussing prices and quantities. There are also messages between VANCE and REBECCA showing REBECCA's involvement, knowledge, and involvement in sales of psilocybin mushrooms. Furthermore, there are numerous messages pertaining to their two minor sons and their use and involvement with psilocybin mushrooms. Examples of this evidence are discussed below.

**CULTIVATION, SALES, AND DISTRIBUTION**

10. On October 24, 2023, VANCE sent a message to a customer about their recent order. VANCE stated the package was being sent out that day and he made 50-60 capsules of a strain he grows. VANCE then provided the customer instructions on how much to take daily along with how potent the capsules are. Based on the results of the search warrants and other evidence in VANCE's phone, I believe capsules to refer to capsules containing psilocybin from VANCE's mushrooms. The conversation is shown below:

Chat

Yay! So excited, thank you SO much and for being so informative!!! It's okay to take it with my Prozac right? And eventually weening off of it if this helps me a lot!

10/24/2023    Abby Herndon                                                    Randy Vance
9:34:28 AM

#1                                                                    Outgoing    Apple
                                                                                 Messages

Chat

Long text alert! Lol.
Package is being mailed out today. 😊
Sorry it took a little longer than planned. The strain that is recommended is a strain I grow; however, it's usually sold in bulk and I didn't have any capsulated. I made about 50-60 capsules of it that I'm sending ya along with a book, stickers, a Psilly Rabbit hoodie and some golf swag for Mike with my cards in case he ever wants any more golf stuff. One of my companies (Servpro) is a PGA sponsor and I get a lot of free golf stuff to hand out.
The capsules are approximately 0.09 grams each. Taking 1 capsule is recommended to start. You will feel nothing physically or mentally but it will expand the hippocampus a bit and the majority of people that take 1 a day have a consensus of "I didn't feel anything but I had a great day!"
Taking 2 of them would be my recommendation after the first few days of building a trust with them.
FYI, it takes most people about 2-3 grams for any hallucinogenic reactions so as long as you keep it under 15 a day, it's harmless lol.
I have a lot of friends that drink a lot and I keep recommending them to alternate a drink with a capsule when they're out so instead of having 5 drinks, just do 2 capsules and 2 drinks or something like that. It's becoming a big thing now of going with that approach.
Once it's shipped I'll send ya the tracking. Really excited for you to try this method out. Fantastic Fungi on Netflix is an excellent documentary to check out if you want to familiarize yourself with it all.

10/24/2023    Abby Herndon                                                    Randy Vance
9:27:12 AM

**DISTRIBUTION OF PSILOCYBIN TO MINORS**

11.    On October 13, 2023, VANCE sent a picture of his older son (LV1) with a large mushroom to someone and says "My 11 year old cultivates and microdoses. It's good for kids' brains." VANCE then said he gives his 9 and 11-year-old children .05 (grams of psilocybin) every other day. I am aware that "microdosing" refers to taking small doses of psilocybin. The conversation is shown below:





12.    On October 16, 2023, while discussing dosage recommendations with a customer, VANCE admitted to microdosing his minor children every day or two. The conversation is shown below:

#4                                                                           Incoming        Apple Messages

Chat

> Okay amazing I think if Lennon or Landon could handle it I probably could as well. I hate taking Prozac and I've always had the belief that I would always be on it. But I've also heard that micro-dosing has helped people come off of medicine. I tried to cold turkey quit last summer and my anxiety manifested into something that was completely unmanageable without medicine. I don't want to rely on something that isn't natural. I feel like healing the body is something that can only happen naturally.

10/16/2023    Abby Herndon                                                  Randy Vance
10:38:43 PM

11/19/2024

#1                                                                           Outgoing        Apple Messages

Chat

> So.....
> Former daily weed smoker here - for a decade lol. I stopped three years ago because it made everything horrible for me. So I can relate to that completely. With mushrooms, hallucinations usually happen when you take between 1.5 - 5 grams (depending on tolerance).
> Microdosing is taking 0.05 grams every day or two. I give my kids that amount and they've never even felt anything. My oldest did when he sneaked three capsules when no one was looking though lol.
> The best way I've heard microdosing explained is:
> "I never felt anything but at the end of the day, I was able to say 'I had a great day!'"

10/16/2023    Abby Herndon                                                  Randy Vance
10:09:01 PM

#2                                                                           Incoming        Apple Messages

13.    On November 28, 2023, VANCE texted his younger son (LV2), "How do you feel?" LV2 replied "Still normal I might trip soon." The conversation is shown below:

14.    I am aware that users of psilocybin commonly discuss hallucinating after consuming psilocybin as a "trip." The conversation above is consistent, based on my training and experience, with the minor having ingested psilocybin.

15.    On March 27, 2024, a psilocybin customer texted VANCE stating they were looking for other options for their adult son instead of the anxiety medications that their son did not want to take. VANCE stated not only does he sell mushrooms, chocolate bars, and microdose capsules, but his children ages 10 and 12, also microdose capsules every morning. As VANCE had previously told customers he dosed his children every other day, it appears he was increasing the frequency of feeding them psilocybin. The conversation is shown below:

**03/27/2024**

#5                                                                    Outgoing    Apple Messages

SMS

> I'm no doctor so I'm cautious on recommending mushrooms but I will say it seems to work with everyone that tries it.
> I sell the mushrooms, chocolate bars and microdose capsules. My kids are 10 and 12 and take the microdose capsules every morning and they've never felt any goofy things.

3/27/2024        +16083183530                                        17608286480
1:09:07 PM

Page 5 of 6

11/19/2024

#1                                                                   Incoming    Apple Messages

SMS

> looking for other options for my adult son instead of the anxiety meds that he doesn't want to take. Alex said u might be able to help.

3/27/2024        +16083183530                                        17608286480
12:29:36 PM

16.    During a search of REBECCA's home pursuant to a warrant on February 12, 2025, REBECCA asked her children if VANCE had ever offered them any drugs. LV1 indicated that he believed VANCE "maybe" offered him psilocybin mushrooms; LV2 indicated that VANCE had not offered him drugs.

**USE OF MINORS TO PRODUCE PSILOCYBIN**

17.    On October 4, 2023, VANCE texted Rebecca Vance concerning one of their sons, "[h]e thought he was gonna play video games tonight but he is in for disappointment because I need help with shroom work. Have pulled four tubs since last night and have six to make before morning." This indicates that VANCE was

already growing significant amounts of psilocybin (enough to have ten tubs to harvest in two days) and involving his children in drug trafficking.

18.    On October 18, 2023, VANCE sent the previously mentioned picture of his son with a large psilocybin mushroom in front of his face with the caption, "My 11 year old helps me grow them." The picture appears to be taken within the SERVPRO business.

19.    Numerous pictures on the **Target Device** show the two minor children's involvement in the cultivation of psilocybin mushrooms. For instance, the following photo from March 30, 2024, shows LV1 and LV2 trimming and preparing harvested psilocybin mushrooms:



**USE OF MINORS TO DISTRIBUTE PSILOCYBIN**

20.    On May 31, 2024, LV1 texted VANCE that he was selling a psilocybin mushroom capsule to his friend for $3. VANCE replied, "Nice! Make sure your

friends parents don't find out or you and I are in big big trouble." This indicates not only that VANCE was aware that LV1 was distributing psilocybin to other minors, but that he encouraged him to do so and to take steps to conceal their joint criminal activity. The text conversation is shown below:

**06/01/2024**

| #1 | | Outgoing | Apple Messages |
|---|---|---|---|
| SMS | | Nice!<br>Make sure your friends parents don't find out or you and I are in big big trouble | |
| 6/1/2024<br>6:51:41 AM | Landon Vance | | 17608286480 |

| #2 | | Incoming | Apple Messages |
|---|---|---|---|
| SMS | For 3$ | | |
| 5/31/2024<br>9:51:10 PM | Landon Vance | | 17608286480 |

| #3 | | Incoming | Apple Messages |
|---|---|---|---|
| SMS | He chill tho | | |
| 5/31/2024<br>9:50:56 PM | Landon Vance | | 17608286480 |

| #4 | | Incoming | Apple Messages |
|---|---|---|---|
| SMS | I'm selling a shroom capsule to my friend | | |
| 5/31/2024<br>9:50:48 PM | Landon Vance | | 17608286480 |

21.    On June 2, 2024, VANCE sent his son two pictures of dried mushrooms in tubs and stated, "Next weekend I should have about 6 more to pull for you to earn some $." The son replied, "Nice" with a thumbs up emoji. This

indicates that VANCE was actively encouraging and participating in his minor son's distribution of psilocybin by providing psilocybin for him to distribute.

22.    On March 25, 2025, investigators obtained a new warrant for an extended search of the **Target Device** from the time of its first use through October 4, 2024. The extended search revealed the following:

23.    On March 17, 2023, VANCE sent a message to REBECCA saying that "the boys" (LV1 and LV2) seemed interested in making money with VANCE by helping him with the "shroom gig." In that same message, VANCE said if they (LV1 and LV2) wanted to work "the lab," that evening with VANCE, VANCE said he could pick up LV1 and LV2, unless Rebecca Vance wanted to bring them. Rebecca Vance hearted VANCE's message and replied that it sounded fun and that she could bring LV1 and LV2 to the lab after dinner. The conversation is shown below:



24.    On March 23, 2023, VANCE sent REBECCA a message saying that VANCE had a "shroom delivery" in "Oside" and he wanted to take his son LV1 with him. Based on my training and experience, I believe a "shroom delivery" is VANCE delivering psilocybin to a customer. Based on my familiarity with the San Diego, California area, I know "Oside" to be a short term for Oceanside, California. VANCE then sent REBECCA a picture of what appeared to be growing mushrooms

in a tub and went on to explain the process and time requirements for the growth of the mushrooms. The conversation is shown below:



25.    On May 18, 2023, REBECCA sent VANCE a text message about an individual named Jordan reaching out to her for mushroom pills. REBECCA went on to tell VANCE that she (REBECCA) had a stash she could give the customer, but did not have bags for it. VANCE replied that he had about 2,000 capsules he could provide and asked how many REBECCA needed. REBECCA replied she just

needed small bags and stickers. She went on to say that she recommended to the customer to take one capsule every two to three days. The conversation is shown below:



26.    On May 24, 2023, VANCE sent REBECCA a text message saying VANCE had to work in his lab the following day and could take LV1 to the lab to help him work. REBECCA replied in a positive manner and said LV1 would be happy about it. Throughout this investigation, I have learned that when VANCE has

mentioned his "lab," he is referring to his mushroom growing operation. The conversation is shown below:



27.    On June 30, 2023, VANCE sent REBECCA a text message saying VANCE was going to meet with a dispensary owner in Fallbrook, California regarding the sale of VANCE's mushrooms. VANCE went on to say he and co-

defendant Kier CEBALLOS, were going to redo the lab and the setup because their operation had grown so much recently. VANCE then said anyone is welcome to join them in reorganizing the lab. REBECCA replied that LV1 may want to help. The conversation is shown below:

28.    On July 25, 2023, VANCE sent REBECCA a picture of LV1 and LV2 with the comment "When I gave [LV2] shrooms lol." The conversation is shown below:



29.    On October 22, 2023, VANCE sent REBECCA a message stating that LV2 assisted VANCE in his mushroom laboratory as they did other activities. REBECCA replied that it sounded like an incredible time for LV2. The conversation is shown below:



30.    On December 17, 2023, VANCE sent a picture of a mushroom to REBECCA with the comment "trippy caps." Behind the mushroom appears to be a younger child with blonde hair, wearing gloves and appears to be handling a mushroom. Based on my knowledge of this investigation, the child appears to be LV1. Rebecca Vance replied with emojis and said "they r!!!" The conversation is shown below:

31.    On January 27, 2024, VANCE sent REBECCA a picture of LV2 holding numerous mushrooms with both hands. Rebecca Vance put an exclamation on the picture and replied with star emoji eyes. The conversation is shown below:



32.    As outlined above, the **Target Device** contains a substantial volume of data and potential evidentiary material that requires careful and methodical review. Due to the breadth and complexity of the information contained within the **Target Device**, investigators were unable to complete a full comprehensive examination

during the time authorized under the initial search warrant approved on March 25, 2025.

33.     Based on my training and experience, a forensic extraction or "download" of a digital device does not always capture the entirety of data stored within the device. Certain applications, including encrypted or privacy-focused messaging platforms, may limit or prevent the full extraction of their contents through standard forensic tools. As a result, relevant communications and other evidentiary material may not be included in the extracted data.

34.     During the prior authorized search of the **Target Device**, investigators observed that some application data was not fully captured through the forensic download. For example, conversations associated with the messaging application "Signal" were not present in the extracted data; however, those same communications were accessible when manually reviewing the device directly. This demonstrates that a forensic extraction alone does not provide a complete representation of the data stored on the device.

35.     A manual review of the **Target Device** allows for direct interaction with the operating system and installed applications, enabling the identification and review of data that may not be captured through automated extraction methods. This includes, but is not limited to, application-based communications, locally stored content, and other user-accessible data that remains present on the **Target Device** that may be of evidentiary value.

36.     Despite conducting a diligent and good-faith review, the limitations of time and the volume of data prevented a full forensic assessment of all potentially relevant content. Based on my training and experience, digital devices such as this often contain additional evidence that may not be immediately apparent without a more thorough and systematic analysis. Accordingly, I am requesting authorization to conduct a continued search of the device in order to complete a full and

comprehensive review for evidence related to the offenses outlined in this affidavit for the time period of the **Target Device**'s first time use through October 4, 2024.

## METHODOLOGY

37.    It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network.  Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

38.    Following the issuance of this warrant, I will collect the **Target Device** and subject it to analysis, including manually reviewing the phone. All forensic analysis of the data contained within the telephone and its memory cards will

employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

39. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN DATA

40. A state search warrant was previously served to obtain data from October 4, 2023, to October 4, 2024.

41. A federal search warrant was previously served to obtain data from the time of the **Target Device**'s first use to October 4, 2024, as discussed above. However, due to the volume of data on the phone and the need for manual review, not everything of evidentiary value was captured at that time.

## CONCLUSION

Based on the foregoing, there is probable cause to believe that items that constitute evidence of violations of federal criminal law, namely, Title 21, United States Code, Sections 841, 846, 859, and 861 and Title 18, United States Code, Section 924(c), as described in Attachment B, will be found in the **Target Device**. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the items described in Attachment A, and seize the items listed in Attachment B using the above-described methodology.

ARNOLDO VALENZUELA
Digitally signed by ARNOLDO VALENZUELA
Date: 2026.05.01 10:18:41 -07'00'

Arnoldo D. Valenzuela, Special Agent

Drug Enforcement Administration

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on the ___1st___ day of May, 2026.

HON. MICHAEL S. BERG
United States Magistrate Judge,
Southern District of California